IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | |
|---|---|
| **ARCHSTONE NORTH CAPITOL HILL 2 LP**<br>**671 N. Glebe Road, Suite 800**<br>**Arlington, Virginia  22203**<br><br>            **Plaintiff,**<br><br>  v.<br><br>**BERKEL & COMPANY CONTRACTORS, INC.**<br>**2649 S. 142nd Street**<br>**Bonner Springs, Kansas 66012**<br><br>       **Serve:**<br><br>            **National Registered Agents, Inc.**<br>            **1015 15th Street, NW**<br>            **Suite 1000**<br>            **Washington, D.C. 20005**<br>            *Registered Agent*<br><br>            **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.:_____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff Archstone North Capitol Hill 2 LP ("Archstone") states as follows as its Complaint for money damages against Defendant Berkel & Company Contractors, Inc. ("Berkel"):

**Parties**

1. Archstone is a limited partnership organized under the laws of the State of Delaware.  Archstone maintains its principal office at 671 N. Glebe Road, Suite 800, Arlington, Virginia  22203 and is the owner of the 13-story mixed-use construction project located at 55 M Street, N.E., Washington, D.C. 20002 known as "AVA NOMA" (the "Project").  Archstone's general partner is "Archstone North Capitol Hill 2 GP LLC," which is a limited liability company

1

organized under the laws of the State of Delaware. The sole beneficial owner of "Archstone North Capitol Hill 2 GP LLC" is "AvalonBay Communities, Inc."

2. Upon information and belief, Berkel is a Kansas corporation with its principal place of business located at 2649 S. 142nd Street, Bonner Springs, Kansas 66012. Upon information and belief, Berkel is registered to do business in the District of Columbia.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332. The parties are of diverse corporate citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has jurisdiction over all parties as a result of their respective business relationships and other forms of commerce in the District of Columbia.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) since the events or omissions giving rise to the claim occurred in the District of Columbia.

### Background Facts

6. Archstone is the owner and developer of the Project.

7. Through a subcontract dated February 13, 2015, Berkel agreed to provide specified design services and furnish certain labor and materials to the Project (the "Berkel Subcontract").[1] *See* Exhibit A, Berkel Subcontract. Among other things, the Subcontract required Berkel to design and construct the Project's excavation shoring system. Section 51 and Exhibits 1 and 5 of

---

[1] The Berkel Subcontract is an agreement between AvalonBay Communities, Inc. and Berkel. AvalonBay Communities, Inc. assigned the Berkel Subcontract, and any and all rights associated therewith, to Archstone.

the Berkel Subcontract describe Berkel's obligations to design and build the "Support of Excavation" for the Project.[2] *See* Exhibit A, Berkel Subcontract.

8. Berkel began to mobilize at the Project site in late February 2015.

9. On March 3, 2015, Berkel began constructing the support of excavation system at the Project site, with the first installation of support piles occurring on March 7, 2015.

10. At the outset of Berkel's on-site activities, Archstone sought assurances from Berkel regarding its ability to manage and coordinate its work. Archstone was concerned about the capability of Berkel's superintendent to oversee Berkel's critical scope of work. Berkel did not take any steps to address Archstone's concerns.

11. Berkel installed the upper tiebacks for the support of excavation on April 17, 2015.

12. In May 2015, Archstone raised concerns with Berkel about its productivity levels in constructing the excavation shoring system. Archstone advised Berkel that its work was proceeding slowly, and that its lack of progress was having a negative impact on the Project. Despite Archstone's concerns about Berkel's personnel and productivity levels, Berkel maintained its Project team and did not make any significant adjustments to its overall manpower.

13. Berkel commenced installation of lower tiebacks for the excavation shoring system on June 3, 2015.

14. On June 15, 2015, various site personnel identified small cracks forming throughout the ground surface areas surrounding the excavation.

15. On July 27, 2015, significant movement occurred in the lateral supports for the excavation shoring system supporting the west wall of the excavation.

---

[2] "Support of Excavation" is essentially sheeting and shoring work that is needed to stabilize excavated subsurface soil walls during a construction project. The timely design and construction of an excavation shoring system for deep-excavation construction is critical for worker safety and the overall progression of work.

3

16. Also in late July 2015, significant surface cracking was observed in a parking lot situated on the lot adjoining the west wall of the Project's excavation.

17. In August 2015, Archstone contacted an independent geotechnical consultant to assess movement in the excavation shoring system. This geotechnical consultant also evaluated Berkel's design and construction activities and analyzed the causes of movement and deflection observed in the framework of the excavation shoring system.

18. In performing its analysis, Archstone's geotechnical consultant collected and reviewed data concerning the excavation system. The geotechnical consultant also reviewed Berkel's design documents and materials for the excavation shoring system.

19. As a result of its review, Archstone's geotechnical consultant determined that Berkel's excavation shoring system was significantly under-designed due to Berkel's failure to properly calculate expected soil pressures and derive the necessary capacity of the support system. Based on these conclusions, the geotechnical consultant determined that the excavation support system would ultimately fail to adequately retain the excavated soil walls.

20. The geotechnical consultant also determined that Berkel's construction of the excavation shoring system was deficient. Among other defects, the geotechnical consultant determined that Berkel failed to install tiebacks and piles in a manner that would prevent unacceptable lateral or vertical soil movement.

21. Due to Berkel's design and construction failures, the support system significantly deflected at various locations, and allowed retained soil to experience significant lateral and vertical movement during general construction activities.

22. Efforts were undertaken in an attempt to address the excavation shoring system's design and construction failures, and thus stabilize the excavation, by erecting a soil berm at the

base of the western wall of the excavation. While the berm provided some initial stability, this relief was short-lived because the berm had to be removed to complete concrete pours for the basement slab. Once the berm was removed, there was an observable increase in the rate of deflection around the excavation shoring system's lower tieback supports, particularly along the west wall of the excavation.

23. In addition to causing property damage, Berkel's design and construction failures caused significant delays, disruptions, and impacts to the Project's schedule, sequencing, and progress.

24. Berkel's design and construction failures occurred at the outset of the major construction activities and caused an immediate and harmful impact to the Project's overall schedule. Construction activities were delayed, resequenced, and/or significantly altered in order to identify and correct Berkel's deficiencies. Although Archstone and other impacted parties took steps to address and mitigate their damages, they incurred, and continue to incur, significant delays and extended performance costs due to Berkel's deficient design and construction work.

25. As a direct and proximate result of Berkel's failure to design and construct an adequate excavation shoring system, Archstone incurred additional costs and financial losses. These additional damages include costs needed to remediate property damage, additional labor and material costs to maintain the construction schedule, and additional costs to avoid further failures of the excavation shoring system. There is also the possibility that Archstone will lose rental fees due to a late delivery of the Project.

26. In addition to the damages described above, delays attributable to Berkel's failure to design and construct an adequate excavation shoring system have jeopardized the tax abatement credit that would otherwise be due to Archstone. Archstone is entitled to receive a ten-year tax

abatement credit from the District of Columbia totaling in excess of $7 million if Archstone secures a Certificate of Occupancy for the Project on or before April 1, 2017. While Archstone has worked to mitigate Berkel's impacts, Archstone reserves the right to seek and recover the total amount of the ten-year tax abatement credit for the Project that is currently at risk as a result of Berkel's faulty performance.

## COUNT I
### (Breach of Contract)

27. The allegations set forth in Paragraphs 1 through 26 are incorporated herein by reference.

28. Under the Berkel Subcontract, Berkel is responsible for designing and constructing the excavation shoring system for the Project.

29. Berkel attempted to design and construct the excavation shoring system for the Project, but failed to satisfy its obligations under the Berkel Subcontract. Specifically, Berkel failed to properly design a sufficient excavation shoring system; failed to provide adequate manpower to the Project; failed to properly coordinate and supervise its design work and on-site activities; failed to ensure that its work was free from errors, omissions, and defects; disrupted and delayed the overall progress of the Project; and failed to provide labor and materials that conformed to the terms and conditions of the Berkel Subcontract.

30. As a direct result of the numerous errors, inconsistencies, omissions, and defects in Berkel's performance, Berkel breached the Berkel Subcontract.

31. Berkel's breaches of contract will cause Archstone to incur significant monetary damages in an amount not less than $2,015,683. In particular, Berkel's failure to satisfy its contractual obligations forced Archstone to incur extensive investigative costs, remediation costs, extended performance and delay costs, and other similar costs and damages. Archstone's

damages are ongoing, continue to accrue, and may include lost tax abatement credits and lost rental fees.

32. As a direct and proximate cause of Berkel's breach of the Berkel Subcontract, Archstone is seeking damages in an amount of not less $2,015,683, plus interest and potential lost tax abatement credits and rental fees, with the exact amount to be proven at trial.

WHEREFORE, Archstone requests that the Court enter judgment against Berkel in an amount to be proven at trial, but not less than two million fifteen thousand six hundred eighty-three dollars ($2,015,683.00), plus interest and any additional damages which may accrue before the date of judgment (*e.g.*, loss of tax abatement credit and lost rental fees), as well as costs, attorneys' fees, and such other relief as provided for under the Berkel Subcontract and as the Court may order.

## COUNT II
### (Professional Negligence)

33. The allegations set forth in Paragraphs 1 through 26 are incorporated herein by reference.

34. Berkel was obligated to perform design services in accordance with the standard of skill and care required of design engineers in the District of Columbia.

35. Berkel owed a duty of care to Archstone arising from the preparation of the design documents for the Project's excavation shoring system.

36. Berkel failed to perform engineering services for the Project with the skill and care required of a design engineer in the District of Columbia, as evinced by the extensive design errors, omissions, and inconsistencies reflected in Berkel's design for the excavation shoring system. Thus, Berkel has deviated from the recognized standards governing design engineers in the District of Columbia.

37.     As a direct and proximate result of Berkel's failure to adhere to and satisfy the governing standard of care for a design engineer furnishing services in the District of Columbia, Archstone will incur costs and damages in an amount not less than $2,015,683, plus interest and any additional damages which may accrue before the date of judgment.  Archstone's damages are ongoing, continue to accrue, and may include lost tax abatement credits and lost rental fees.

38.     Berkel is liable for costs and damages that Archstone suffered as a result of Berkel's professional negligence.

WHEREFORE, Archstone requests that the Court enter judgment against Berkel in an amount to be proven at trial, but not less than two million fifteen thousand six hundred eighty-three dollars ($2,015,683.00), plus interest and any additional damages which may accrue before the date of judgment (*e.g*., loss of tax abatement credit and lost rental fees), as well as costs, attorneys' fees, and such other relief as the Court may order.

Respectfully submitted,

Date:  October 27, 2016

/s/  Gregory H. Koger
_____
Stephen B. Shapiro, Esq.
D.C. Bar No. 414045
Gregory H. Koger, Esq.
D.C. Bar No. 472372
Holland & Knight LLP
800 17th Street, N.W.
Washington, D.C. 20006
Phone:  (202) 955-3000
Fax:  (202) 955-5564
stephen.shapiro@hklaw.com
greg.koger@hklaw.com

*Counsel to Plaintiff Archstone North Capitol Hill 2 LP*

#48460140_v1